Jesse Cloud **ROBINSON** and Sue Ann Mitchell, Appellants–Defendants,

v.

**MONROE COUNTY, Indiana,**
Appellee–Plaintiff.

No. 60A04–9506–CV–225.

Court of Appeals of Indiana.

Dec. 11, 1995.

Rehearing Denied March 21, 1996.

---

Jesse C. Robinson and Sue Ann Mitchell, Bloomington, pro se.

J. Alexander Tanford, Bloomington, for appellants.

David B. Schilling, Monroe County Attorney's Office, Bloomington, for appellee.

## OPINION

FRIEDLANDER, Judge.

Jesse Cloud Robinson and Sue Ann Mitchell (the Appellants) appeal from a summary

judgment ruling in favor of Monroe County, Indiana (the County). The Appellants present the following restated issue for review:

Does Ind.Code 36–7–8–3(d), which provides that building codes do not apply to private homes that are built by individuals and used for their own occupancy, apply to an individual who hires independent building contractors to construct portions of his house?

We reverse.

The facts in favor of the Appellants, the non-moving parties, are that the Monroe County Commissioners established the Monroe County Building Department in 1988. The Building Department was granted the powers and duties set out in I.C. 36–7–8, *et seq.* Soon thereafter, the Monroe County Commissioners created the Monroe County Building Code, which was applicable to the construction, alteration, repair, use, occupancy, maintenance, and additions to all buildings and structures in the unincorporated areas of Monroe County. The Monroe County Building Code was approved by the Indiana Fire Prevention and Building Safety Commission on April 5, 1988.

In 1991, Appellants purchased two acres of real property in an unincorporated area of Monroe County, Indiana. In March or April of 1992, the Appellants began construction of a single family dwelling on their property. The Appellants did some of the construction work themselves and hired contractors to do the rest. Among the work performed by contractors was: 1) excavating and preparing foundation trenches; 2) building the foundation walls and finishing the concrete garage floors; 3) building and finishing the house's concrete slab floor; 4) hanging and finishing the drywall in the house; and 5) installing the heating and ventilating system. The Monroe County Building Code required that various permits be obtained in conjunction with the construction of a house, including a building permit and an occupancy permit. The Appellants failed to obtain such permits.

On February 9, 1993, the County filed a Verified Complaint for Permanent Injunction and Civil Penalty on Ordinance Violations alleging that the Appellants were required to obtain the relevant building and occupancy permits, were asked to do so, and refused to comply. The County sought an injunction "which enjoin[ed] [the Appellants] from further erecting, constructing, enlarging, altering, repairing, improving, removing, converting, equipping, using, occupying or maintaining the [Appellants's house] until all permits required by the Code [had] been obtained." *Record* at 56. The County further sought an order requiring the Appellants to pay costs incurred by the County in determining whether the house was constructed in accordance with the Code and requiring that the Appellants pay the costs of any necessary repairs. The County also sought an order requiring the Appellants to pay a civil penalty of $250.00 per day for each day the Appellants were found to be in violation of the Code.

The Appellants denied that they were required to obtain any permits from the County, contending that they were exempted from such requirements by IC 36–7–8–3(d). The County submitted a motion for summary judgment, contending that IC 36–7–8–3 did not apply because some of the construction work on the Appellants' house was performed by professional contractors. The Appellants appeal from the granting of the County's summary judgment motion.

The facts material to the issue before us are not in dispute. The Appellants admit that they constructed a house without obtaining permits pursuant to the Monroe County Building Code. The Appellants also admit that some of the construction work on their house was performed by contractors. The controversy in the instant case centers upon the applicability of IC 36–7–8–3(d) to the undisputed facts. The question presented by the Appellants, therefore, is essentially one of statutory construction.

■■■ The interpretation of a statute is a question of law which is reserved for the courts. *Robinson v. Zeedyk* (1993), Ind.App., 625 N.E.2d 1249, *trans. denied.* Our objective when construing the meaning of a statute is to determine and implement the legislature's intent. *Post–Tribune v. Police Dept. of City of Gary* (1994), Ind., 643 N.E.2d 307. In interpreting a statute, we are guided by

the language employed in the statute and the legislative intent which we ascertain from that language. *Estate of Chiesi v. First Citizens Bank, N.A.* (1992), Ind.App., 604 N.E.2d 3, *opinion adopted,* (1993), Ind., 613 N.E.2d 14.

IC 36–7–8–3 states:

"(a) The legislative body of a county having a county department of buildings or joint city-county building department may, by ordinance, adopt building, heating, ventilating, air conditioning, electrical, plumbing, and sanitation standards for unincorporated areas of the county. These standards take effect only on the legislative body's receipt of written approval from the fire prevention and building safety commission.

(b) An ordinance adopted under this section must be based on occupancy, and it applies to:

(1) the construction, alteration, equipment, use, occupancy, location, and maintenance of buildings, structures, and appurtenances that are on land or over water and are:

(a) erected after the ordinance takes effect; and

(b) if expressly provided by the ordinance, existing when the ordinance takes effect;

(2) conversions of buildings and structures, or parts of them, from one occupancy classification to another; and

(3) the movement or demolition of buildings, structures, and equipment for the operation of buildings and structures.

(c) The rules of the fire prevention and building safety commission are the minimum standards upon which ordinances adopted under this section must be based.

(d) *An ordinance adopted under this section does not apply to private homes that are built by individuals and used for their own occupancy.*" [Emphasis supplied.]

The dispute in the instant case arises from the interpretation of the phrase "homes that are built by individuals". The County contends that in order to come within the statute, and thus claim exemption from the requirement of obtaining permits, a party must personally perform all of the construction work on his or her house. According to the County, the exception does not apply in the instant case and the entire construction project was subject to the requirements of the building code because the Appellants hired subcontractors to perform certain construction tasks on their house. The Appellants argue that Subsection (d) applies because they performed much of the construction work on their house. Moreover, the Appellants appear to argue that the exemption applies even if the owner performs no physical labor themselves, but rather causes the house to be built by others.

The legislative history of IC 36–7–8–3(d) is sparse and provides little enlightenment as to its meaning. The house and senate journals reflect the passage of the bill through the house of representatives and the senate but do not contain discussion about the substance of the act. As originally enacted, Section 3 contained the following statement of purpose:

"The purpose of the ordinance is to provide for the safety, health and public welfare through structural strength and stability, means of egress, adequate sanitation, plumbing, light and ventilation, and protection of life and property from fire and hazard incident to design, construction, alteration, and for the removal or demolition of buildings and structures in the unincorporated areas of counties having a population between 300,000 and 600,000 according to the last preceding United States census." 1965 Acts, Chapter 348, Section 2.

The purpose set out above is applicable to Section 3 as a whole. The purpose underlying the entire section, however, is clearly not applicable to Subsection (d). In fact, Subsection (d) represents an exception to the safety-oriented requirements set forth elsewhere in the statute and thus is contrary to the purpose of the statute. That is, exempting an individual from the requirements of obtaining authorization for proposed construction and subjecting the completed work to inspection and approval prior to permitting occupancy of the building runs contrary to

the goal of ensuring safe buildings. Yet, Subsection (d) undeniably creates such an exception from the requirements set out in Section 3.

■ We can conceive of only one purpose which could justify allowing a builder to circumvent certain applicable building safety ordinances when he builds a house which he will occupy. In its early stages, this country's frontier was moved westward by pioneers who moved onto land and built houses made from the materials at hand. Since then, home owning has become an essential facet of the "American dream". It may be argued that ordinances such as those contemplated by IC 36–7–8–3, which establishes construction specifications and require permits and inspections for residential construction projects, interfere with the ability of some individuals to build their own home and thus to pursue the American dream.

Building codes and ordinances may conceivably discourage or impede such individuals from building their own houses. A private individual building his own house may not possess the skills necessary to construct a building which complies with the technical specifications set out in the ordinances. In addition, an individual may not be able to afford to hire professionals or others to build a house. Therefore, exempting a person who wishes to build his own house from the requirements imposed pursuant to IC 36–7–8–3 of complying with construction specifications and obtaining permits allows that person to build a house even though he may not possess the skills or equipment to comply with technical specifications, and allows him to do so even if he is not able to afford to pay others to do the work. With this purpose in mind, we consider the meaning of "built by individuals" as used in IC 36–7–8–3(d).

■ The Appellants contend that "built" in this statute means "that an individual was responsible for construction, not that he did all of the work himself." Appellants' Brief at 13. Such an interpretation, however, would render the exception coterminous with the rule itself. The Appellants' interpretation would allow an individual to place himself in the position of a general building contractor by hiring all of the subcontractors to construct the various components of a house, thereby exempting himself from the requirement of complying with the applicable building code regulations set out in Section 3. This result would not be in harmony with the purpose of the exception created by Subsection (d). Subsection (d) was meant to enable persons to build their own home even if they do not personally possess the skills or equipment to comply with the building code, and if they cannot afford to pay professionals or others to do the work. A professional subcontractor, however, whether hired by a general contractor or the person for whom the house is being built, *does*, or should, possess the skills and equipment to comply with code requirements. Moreover, the hiring of a subcontractor indicates that a homeowner has the financial resources to pay professionals or others to construct a house which complies with the applicable building codes.

■ Although exempting work performed by subcontractors is not consistent with the purpose of Subsection (d), we are not persuaded by the County's argument that IC 36–7–8–3(d) is an "all-or-nothing" provision. Some components of new home construction would seem to be beyond the ability of even the most industrious of those who would build their own house. Were we to hold that Subsection (d) is applicable only when every component of the construction of a new house is completed privately by the homeowner, we would narrow the exception to such an extent as to render it meaningless. The better interpretation, and one consistent with the purpose of Subsection (d), is that the exception applies when the homeowner himself completes a substantial portion of the construction of his home. In the instant case, the record indicates that the Appellants did all of the framing and roofing, the finish and cabinet work, the electrical work, and the plumbing. Such comprises a substantial portion of the construction work necessary for a new house; therefore, the exception contained in Subsection (d) applies to the Appellants.

■ Finally, we must consider whether Subsection (d) applies to work performed by professional subcontractors or others on

houses of which a substantial portion of the construction was done by the owner. The reasons for creating the exception contained in Subsection (d) for private individuals do not similarly support exempting the work performed by professional subcontractors or others, no matter who hires them. Their hiring indicates that the homebuilder can afford to pay others to do a portion of the construction work, and contractors obviously possess the expertise and equipment to comply with applicable building codes. We conclude, therefore, that when IC 36–7–8–3(d) operates to exempt an individual from having to comply with the requirements set out in Section 3, any construction work performed by professional subcontractors or others paid by the owner is not subject to the exemption and said work must be performed in compliance with all applicable building code requirements.

In summary, we hold that IC 36–7–8–3(d) applies to private individuals who themselves, or with the assistance of unpaid non-professionals, perform a substantial amount of the construction work on a house. However, any work performed on such construction projects by professional subcontractors or others who are paid for their work is not subject to the exemption and must be completed in compliance with applicable building code regulations. We note also that IC 36–7–8–3(d) only creates an exemption from the requirements set out in Section 3 and does not provide a similar exemption from the requirements set out in Section 4 concerning minimum housing standards and related ordinances. Accordingly, none of the discussion contained herein is applicable to any requirement set out in IC 36–7–8–4.

Judgment reversed.

SULLIVAN and KIRSCH, JJ., concur.